## MARSH v. RAMSAY.

PURCHASER FOR VALUE.—A MORTGAGE executed to secure the payment of antecedent debts does not entitle mortgagee to invoke the protection accorded to a purchaser for valuable consideration without notice.

Before BENET, J., Oconee, June, 1899. Reversed.

Action by Edwin Marsh, survivor of Moore, Marsh & Co., against Andrew H. Ramsay, Alexander Ramsay, as executors of Alexander Ramsay, sr., and in their own right, and Geo. Julius Ramsay. Defendants appeal.

*Mr. Wm. J. Stribling,* for appellant, cites: *Will converts realty to personalty:* 46 S. C., 430; 5 Rich. Eq., 202. *Plaintiff is not purchaser for value at time mortgage was executed, for it was only to secure old debt:* 6 S. C., 159; 26 S. C., 512. *Notice to the attorney of plaintiff of sale of Ramsay's interest while acting for plaintiff is notice to him:* 10 S. C., 293; 29 S. E. R., 659; 115 Ill., 289; 80 Mo., 179.

*Messrs. Jaynes & Shelor,* contra, cite: *Plaintiff parted with value at time mortgage was executed:* 27 S. C., 576; 36 S. C., 333; Rev. Stat., 1968. *As to notice to plaintiff's attorney of sale of Ramsay's interest:* 111 N. Y., 604; 8 Kan., 519; 72 Mo., 250; 7 At. R., 145; 38 N. J. Eq., 158; 2 L. R. A., 736; 10 Rich., 298; 33 S. C., 451; 19 S. E. R., 358. *As to character of notice:* 51 S. C., 348. *No conversion here:* 11 Rich. Eq., 541; Dud. Eq., 212; 95 U. S., 591.

March 30, 1900.   The opinion of the Court was delivered by

MR. JUSTICE GARY.   The facts of the case are thus set forth in the decree of his Honor, the Circuit Judge:

"This is an action for partition, and comes before me for hearing on exceptions to the master's report.   The plaintiff brings this action as surviving member of the firm of Moore, Marsh & Co., a partnership formerly existing and doing business in the city of Atlanta, Ga., composed of Edwin W. Marsh, William Kingsberry, William T. Ashford, John A. Smith and McAllen B. Marsh.   It appears that prior to the year 1892, the firm of Ramsay & Ward, of which William J. Ramsay was the senior member, became indebted to the firm of Moore, Marsh & Co. for goods and merchandise sold to the amount of about $2,200, and had deposited sundry choses in action as collateral security to their account.   The firm of Ramsay & Ward failed in business.   On April 1st, 1892, said indebtedness was adjusted at $1,500.   A new note was given for that sum, and William J. Ramsay secured its payment by the mortgage of his interest in the real estate described in the complaint as lying on the Tugaloo River. The mortgage was recorded April 5th, 1892.   It was subsequently discovered that an error had been made by William J. Ramsay in describing his interest as one-third, whereas he had only one-fifth residuary interest in the estate, real and personal, of his father, Alexander Ramsay, sr., deceased.   On April 19th, 1892, William J. Ramsay executed and delivered to Moore, Marsh & Co. his second mortgage

deed, covering his entire one-fifth interest in both the real and personal estate of his father, as further security for the same debt. On November 1st, 1895, Edwin W. Marsh, one of the surviving members of the firm of Moore, Marsh & Co., instituted action for foreclosure of said mortgage, and on February 3d, 1896 (salesday), the property covered by said mortgage was sold by the master under judgment of foreclosure. It was bought by Edwin W. Marsh, as a surviving member of the firm of Moore, Marsh & Co., who complied with the terms of the sale and received the master's deed, conveying all the interest of William J. Ramsay in the real and personal estate of Alexander Ramsay, sr., deceased, including the valuable tract of land lying on Tugaloo River, sought to be partitioned in this action."

W. J. Ramsay, executed the following instrument of writing at the time herein mentioned: "Received of A. H. Ramsay $1,500 for my interest in the estate of my father, Alexander Ramsay, sr., deceased, which said interest I do relinquish unto the said A. H. Ramsay to be controlled and settled with him by the executors of said estate, this May 12th, 1871. W. J. Ramsay. (L. S.)" The master found that the plaintiff was a *bona fide* purchaser for valuable consideration without notice of the rights of A. H. Ramsay. The Circuit Judge sustained the report of the master.

The defendants appealed upon exceptions, the first and third of which are as follows: "1st. Because the Circuit Judge erred in holding that plaintiff was a purchaser for valuable consideration of the interest of W. J. Ramsay in his father's estate without notice of the equitable title thereto of the defendant, A. H. Ramsay. 3d. Because the Circuit Judge should have held that plaintiff was not a purchaser of said interest for valuable consideration without notice, for the reason that said mortgage was given to secure an antecedent debt, plaintiff having totally failed to prove any valuable consideration paid at the time of the giving of the mortgage." The first question that will be considered is whether his Honor, the Circuit Judge, erred in deciding that

the plaintiff was a purchaser for valuable consideration without notice of A. H. Ramsay's rights. In determining this question, it is important to ascertain what the consideration was that induced W. J. Ramsay to execute the mortgage to the plaintiff. The Circuit Judge says the indebtedness of the firm was adjusted on the day the mortgage was executed, by the surrender of certain choses in action, held as collateral for said indebtedness, and the giving of the promissory note for $1,500, secured by a mortgage of the interest of W. J. Ramsay in the said land. There was no testimony showing that these choses in action were of any value, nor does the Circuit Judge so find. The master in his report says, that W. J. Ramsay being considerably indebted to the said firm, executed the mortgage to secure a note given by himself and Wm. Ward for $1,500, but does not mention the choses in action as forming part of the consideration. The plaintiff did not except to this finding by the master. But even if the question as to the consideration of the mortgage was properly before the Circuit Court, we are satisfied that the only consideration for executing the mortgage was to secure payment of the indebtedness existing prior to that time.

Having settled the question of fact, we will proceed to state the principle of law governing such cases. In the case of *Dearman* v. *Trimmier*, 26 S. C., 506, Mr. Chief Justice McIver says: "In the case of *Haynesworth* v. *Boschoff* (6 S. C., 159), the question arose, not under the commercial but under the equity rule, and it was there held to be well settled, that a person cannot invoke the protection of the equity rule, as a purchaser for valuable consideration without notice, unless he has paid the purchase money *at the time of the purchase;* and, that where the property in question was acquired in payment of an antecedent debt, still less where it was acquired as collateral security for such debt, he could not invoke the protection of the rule." In Pom. Eq. Jur., vol. 2, sec. 749, the following language is used: "A conveyance of real or personal property as security for an

antecedent debt does not, upon principle, render the trans-
feree a *bona fide* purchaser, since the creditor parts with no
value, surrenders no right and places himself in no worse
legal position that before. The rule has been settled, there-
fore, in very many of the States, that such a transfer is not
made upon a valuable consideration, within the meaning of
the doctrine of *bona fide* purchaser." Among the cases sus-
taining this doctrine the case of *Zorn* v. *R. R. Co.*, 5 S. C.,
90, is cited in the note. We regard the rule as settled in this
State, that a mortgage executed for the purpose of securing
payment of antecedent debts, does not entitle the mortgagee
to invoke the protection accorded to a purchaser for valu-
able consideration without notice. The Circuit Judge,
therefore, erred in ruling otherwise.

Having reached this conclusion, it becomes unnecessary
to consider the other exceptions, as they only raise abstract
questions.

It is the judgment of this Court, that the judgment of the
Circuit Court be reversed.